# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT ALLAN BULLOCK and PHYLLIS LOIS BULLOCK, as Administrators of the Estate of MATTHEW LEE BULLOCK | CIVIL ACTION NO. 3:10-CV-401 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| JEFFREY A. BEARD, et al., | |
| Defendants, | |

## MEMORANDUM

Presently before the Court are the Motions to Dismiss of Defendant Prison Health Services, Inc. ("PHS") (Doc. 5.), Defendant MHM Correctional Services, Inc. ("MHM") (Doc. 8), and Defendants Jeffrey Beard, Michael Klopotski, Jerome Walsh, Vincent Mooney, John Corbett, James Wilk, Robert Bath, Robert McCoy, Lawrence Pudlosky, Joseph Matello, Paul Sromovski, Andrem Sromovski, Tracy Starzynski, and Chester Filipiak ("Commonwealth Defendants")[1] (Doc. 10.) For the reasons discussed more fully below, these motions will be denied.

## BACKGROUND

The facts alleged in the Complaint are as follows. On October 28, 2003, Plaintiffs' Decedent, Matthew Lee Bullock ("Decedent"), was found guilty but mentally ill on one count of murder in the third degree and one count of voluntary manslaughter. (Compl. ¶ 22.) At trial, evidence was presented that Decedent suffered from a panoply of psychiatric disorders,

---

[1]These Defendants are all administrators or corrections officers working for the Pennsylvania Department of Corrections. Thus, they will be referred to collectively as the Commonwealth Defendants.

had struggled with auditory hallucinations and psychotic episodes, had multiple inpatient hospitalizations for mental illness, and had attempted suicide over twenty (20) times prior to his incarceration. (Compl. ¶ 23.)

Decedent was sentenced to twenty (20) to sixty (60) years in the custody of the Pennsylvania Department of Corrections, to be spent in a secure mental health facility for the needed treatment period. (Compl. ¶ 26.) Instead, Decedent was confined solely in State Correction Institutes; on July 15, 2009, Decedent was transferred to State Correctional Institute at Dallas ("SCID"). (Compl. ¶ 27.) While at various other correctional facilities before his transfer to SCID, Decedent attempted suicide at least three (3) times. (Compl. ¶¶ 29-31.) On July 31, 2009, Decedent told staff at SCID that he was hearing voices, was "stressed" because his victim was related to an SCID employee, and also made self-inflicted cuts on the inside of his wrists. (Compl. ¶¶ 32-34.) At some point following this incident, Decedent's psychiatric medications were decreased and he was placed in the Restricted Housing Unit ("RHU").[2] (Compl. ¶¶ 35-36.)

On August 24, 2009, Decedent threatened to kill himself; the Defendant Correctional Officers were aware of this threat, as were the other Commonwealth Defendants.[3] (Compl. ¶¶ 45.) Following this threat, the Defendant Correctional Officers moved Decedent to a cell that did not have an observation camera, permitted Decedent to possess "instrumentalities which are commonly used to commit or attempt suicide in a prison setting," incited Decedent

---

[2] The RHU houses inmates assigned to administrative custody or disciplinary custody and is not designed for the secure confinement or treatment of inmates suffering from psychiatric disorders or other mental illness. (Compl. ¶¶ 37-38.)

[3] Defendants Corbett, Wilk, Bath, McCoy, Pudlosky, Matello, P. Sromovski, A. Sromovski, Starzynski and Filipiak are the Correctional Officer Defendants.

2

to kill himself, and failed to check Decedent's cell every fifteen (15) minutes per prison policy. (Compl. ¶¶ 45-47.) At approximately 6:15 P.M. on August 24, 2009, Decedent was found hanging in his cell; he was pronounced dead shortly thereafter. (Compl. ¶¶ 48-49.) The manner of death was determined to be suicide. (Compl. ¶ 49.)

Plaintiffs also allege that Defendants Beard, Klopotosky, Walsh and Mooney, who were administrators, supervisors and managers for the Pennsylvania Department of Corrections and SCID, were deliberately indifferent in the training of prison personnel in regard to procedures for the identification, segregation and treatment of suicidal and/or mentally ill prisoners. (Compl. ¶¶ 56-58.) Specifically, they were deliberately indifferent in the training of prison personnel in 1) monitoring suicidal or mentally ill inmates, 2) ensuring that mentally ill inmates were provided adequate food and showers, 3) ensuring that mentally ill inmates are housed in areas with proper lighting, ventilation and surveillance, 4) ensuring that mentally ill inmates are placed on fifteen (15) minute observations or transferred to a psychiatric facility, 5) discouraging suicidal tendencies instead of actively encouraging them, and 6) ensuring that mentally ill inmates do not have instruments of suicide. (Compl. ¶ 59.) It is also alleged that the defendants "condoned the disregard of the medical and psychiatric needs of the inmates entrusted to their care, such that Decedent's death was substantially likely to occur." (Compl. ¶ 60.)

Furthermore, it was the policy or custom of these defendants to permit 1) inappropriate monitoring of suicidal or mentally ill inmates, 2) failures in ensuring that mentally ill inmates were provided adequate food and showers, 3) failures in ensuring that mentally ill inmates are housed in areas with proper lighting, ventilation and surveillance, 4) failures in ensuring that mentally ill inmates are placed on fifteen (15) minute observations

3

or transferred to a psychiatric facility, 5) failures in discouraging suicidal tendencies instead of actively encouraging them, and 6) failures to ensure that mentally ill inmates do not have instruments of suicide. (Compl. ¶ 62.)

Plaintiff also alleged that MHM and PHS had a policy or custom to 1) provide the absolute minimum of health and psychiatric care to inmates of SCID, 2) discontinue treatment and not provide the appropriate dosages of psychiatric medication, and 3) provide the least amount of medical care possible so that they could reap the largest amount of profit possible. (Compl. ¶¶ 71, 78-79.) These actions allegedly exhibited a deliberate indifference to Decedent's psychiatric needs and constitutional rights. (Compl. ¶ 81.)

Plaintiffs filed the instant Complaint in the Luzerne County Court of Common Pleas on January 26, 2010. The Complaint brought causes of action against all Commonwealth Defendants and John Does 1-15[4] pursuant to 42 U.S.C. § 1983 for violations of the Decedent's Eighth and Fourteenth Amendment Rights (Count 1), Defendants Beard, Klopotosky, Walsh and Mooney pursuant to 42 U.S.C. § 1983 for violations of the Decedent's Eighth and Fourteenth Amendment Rights (Count 2), and MHM, PHS and John Does 16-25[5] pursuant to 42 U.S.C. § 1983 for violations of the Decedent's Eighth and Fourteenth Amendment Rights (Count 3). On February 23, 2010, Defendants filed a Notice of Removal. (Doc. 1.)

On March 1, 2010, PHS filed a Motion to Dismiss. (Doc. 5.) On March 2, 2010, MHM filed a Motion to Dismiss (Doc. 8.) On March 3, 2010, Commonwealth Defendants filed a

---

[4]John Does 1-15 are unnamed employees of SCID during the relevant time period.

[5]John Does 16-25 are unnamed employees of MHM and /or PHS during the relevant time period.

4

Motion to Dismiss. (Doc. 10.) These motions have all been fully briefed and are currently ripe for disposition.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are

based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### A.     42 U.S.C. § 1983: Eighth Amendment Standard

The text of 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments

inflicted."[6] To make out a cause of action for cruel and unusual punishment, a plaintiff in a prisoner suicide case has the burden of establishing 1) that the decedent had a particular vulnerability to suicide, 2) the custodial officer or officers knew or should have known of that vulnerability and 3) those officers acted with reckless indifference to the decedent's vulnerability. *Herman v. County of York*, 482 F. Supp.2d 554, 563 (M.D. Pa. 2007) (citing *Colburn v. Upper Darby Township*, 946 F.2d 1017 (3d Cir. 1991)). In order for such a claim to survive, the prison officials must know of and disregard an excessive risk to inmate health; in other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005).

### B.     42 U.S.C. § 1983: Liability for Private Corporations

A private corporation may be held liable for violations of § 1983 if, while acting under color of law, the corporation knew of and acquiesced in the deprivation of the plaintiff's constitutional rights. *Winslow v. Prison Health Services, Inc.*, No. 1:08-cv-0785, 2010 WL 57166, at *5 (M.D. Pa. Feb. 12, 2010). To establish liability, the plaintiff must prove that the corporation with deliberate indifference to the consequences established and maintained a policy, practice or custom that directly caused the plaintiff's constitutional harm. *Id.*

### C.     42 U.S.C. § 1983: Supervisory Liability

For a supervisor to be held liable under § 1983, Plaintiffs must show more than

---

[6] To the extent that Plaintiff's Fourteenth Amendment claims fall under the rubric of substantive Due Process, those claims cannot survive. When a constitutional claim is covered by another specific constitutional provision, such as the Eighth Amendment, the claim must be analyzed under the standard appropriate to the specific provision, not substantive due process. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). To the extent that Plaintiff cites the Fourteenth Amendment as a way to incorporate the Eighth Amendment against state actors and employees, those claims survive.

7

*respondeat superior* liability and, instead, must show that the supervisor played a personal role in violating their rights. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). This can be shown by personal conduct of the supervisor, personal direction from a supervisor, or by "actual knowledge and acquiescence." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Chernavsky v. Township of Holmdel Police Dep't.*, No. 04-3621, 2005 U.S. App. LEXIS 11173, at *7 (3d Cir. May 24, 2005).

### D. Count 1

In Count 1, Plaintiffs allege that the Correctional Officer Defendants and Defendants Beard, Klopotosky, Walsh, Mooney and John Does 1-15 individually violated Decedent's Eighth Amendment rights. The Complaint certainly satisfies the first prong of the test articulated above by listing Decedent's litany of mental illnesses and frequent suicide attempts. The Complaint also alleges that these Commonwealth Defendants all knew that Decedent was mentally ill and that he was going to commit suicide, thereby satisfying the second prong. (Compl. ¶ 50.) The third prong is also met through Plaintiff's allegations that the Commonwealth Defendants weakened his resolve through lack of food, hygiene, ventilation and lighting, encouraged Decedent to commit suicide, and provided him with the location and instrumentality to do so, despite knowing Decedent planned to commit suicide. (Compl. ¶ 50.) At this stage of the litigation, taking all the facts in the Complaint as true, Plaintiffs have successfully made out a cause of action for violations of § 1983 pursuant to Eighth Amendment violations. Thus, Defendants' Motion to Dismiss will be denied.

### E. Count 2

In Count 2, Plaintiffs bring a § 1983 claim against Defendants Beard, Klopotosky,

Walsh and Mooney. Most of the language in this claim seems to be couched in the rhetoric of municipal liability claims for failure to train employees. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). However, Plaintiffs have not named any municipal defendants, so this cannot be the appropriate standard for this claim.

The only other type of claim that would have been covered under Count 1 is a claim for supervisory liability. The Plaintiffs' Complaint makes out a claim under supervisory liability by alleging that these Defendants had actual knowledge of the Eighth Amendment violations occurring in SCID and acquiescing to these violations. For example, the Plaintiffs alleged that the defendants were deliberately indifferent to the safety of prisoners and thereby condoned the disregard for psychiatric needs of inmates, such that Decedent's death was likely to occur. (Compl. ¶ 60.) This claim, therefore, alleges the type of knowledge and acquiescence sufficient to make out a claim for supervisory liability pursuant to 42 U.S.C. § 1983.[7] Thus, Defendants' Motion to Dismiss on this count will also be denied.

**F.    Count 3**

Count 3 brings a claim against PHS, MHM, and John Does 16-25 for violations of 42 U.S.C. § 1983. There does not seem to be any argument regarding Plaintiffs' allegation that MHM and PHS acted under color of state law by voluntarily undertaking to engage in a

---

[7] Much of Defendants' Motions to Dismiss in this instant case focused heavily on the proper standard for 12(b)(6) motions and the recent developments in the jurisprudence surrounding this issue. *See, e.g., Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). While the Third Circuit Court of Appeals clarified the mechanism whereby district courts should examine 12(b)(6) motions in *Fowler*, 578 F.3d at 210-11, the appropriate standard for judging these motions remains that the court must accept all factual allegations as true, construe the complaint in the light most favorable to plaintiff, and determine whether the plaintiff *may* be entitled to relief, under any reasonable reading of the complaint. *Folwer*, 578 F.3d at 210 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). This is precisely the undertaking engaged in by this Court in the instant case. While Defendants might doubt the ultimate ability of Plaintiffs to prove the claims in their Complaint, that is not what is presently before the Court. Instead, this Court must determine whether the Plaintiffs have properly alleged the claims in their Complaint, such that they should be entitled to present evidence. In this case, Plaintiffs have and will.

9

traditional governmental function. (*See* Compl. ¶ 69.) However, Defendants do argue that Plaintiffs have not properly alleged a policy or custom sufficient to create a cause of action pursuant to § 1983. Defendants claim that the allegations in Plaintiffs' Complaint are the type of bald assertions and legal conclusions that the Supreme Court forewarned in *Iqbal*.

This Court's reading of the Complaint finds that the Plaintiffs have alleged particular policies or customs with sufficient specificity to survive a motion to dismiss. Plaintiffs have not simply alleged that there was a general policy or custom, but have pointed to specific policies that led to Decedent's suicide. In particular, Plaintiffs have alleged that MHM and PHS had a policy or custom to 1) provide the minimum of psychiatric care to inmates at SCID, 2) discontinue psychiatric treatment and not provide appropriate dosages of medicines in cases like Decedent's, and 3) provide the least amount of medical care to SCID inmates so that PHS and MHM could reap the most profits.[8] Again, the ultimate success or failure of these claims is not before this Court on a 12(b)(6) motion, only whether Plaintiffs have properly alleged a cause of action, which they have. Therefore, Defendants' Motion to Dismiss on this count will also be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss will be denied. An appropriate order follows.

April 14, 2010 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge

---

[8] While reaping profits is likely a motivation rather than a policy or custom, providing the least amount of medical care is a policy or custom.

10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT ALLAN BULLOCK and PHYLLIS LOIS BULLOCK, as Administrators of the Estate of MATTHEW LEE BULLOCK<br><br>Plaintiffs,<br><br>v.<br><br>JEFFREY A. BEARD, et al.,<br><br>Defendants, | CIVIL ACTION NO. 3:10-CV-401<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this __14th__ day of April, 2010, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (Docs. 5, 8, 10) are **DENIED.**

                                                      /s/ A. Richard Caputo  
                                                      A. Richard Caputo  
                                                      United States District Judge